UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

Isabel Guerra Lamarche )
)
)
Petitioner, )
)
v. )
)
) Cause No. _____
)
Kristi Noem )
Secretary, U.S. Department of )
Homeland Security et al. )
)
Todd Lyons, Acting Director, U.S. )
Immigration and Customs )
Enforcement (ICE) )
)
Marcos Charles, Acting Executive )
Associate Director, ICE and Removal )
Operations )
)
Pamela Bondi, U.S. Attorney General )
)
Warden, Montgomery Processing )
Center )
Respondents. )

_____

PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C.
§ 2241 AND COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

1. Petitioner Isabella Guerra-Lamarche (A#240-648-252), through counsel,

files this Writ of *habeas corpus* under 28 U.S.C. § 2241, challenging the

legality of her continued detention by Immigration and Customs Enforcement ("ICE").

2. Petitioner is in the physical custody of Respondents at the Montgomery Processing Center in Conroe, Texas. (*Ex 1 Detainee Locator*) She now faces unlawful detention because the Department of Homeland Security (DHS) and the Executive Office of Immigration Review (EOIR) have concluded Petitioner is subject to mandatory detention. (*Ex 2 NTA*)

3. Petitioner is charged with, *inter alia*, having entered the United States without admission or inspection. *See 8 U.S.C. § 1182(a)(6)(A)(i).* Consistent with a new DHS policy issued on July 8, 2025, this policy instructs all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under *8 U.S.C. § 1182(a)(6)(A)(i)* to wit., those who entered the United States without admission or inspection. Under this policy the Petitioner is therefore subject to detention under *8 U.S.C. § 1225(b)(2)(A)* and therefore ineligible to be released on bond.

4. Similarly, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8

U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5. Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond.

6. That statute expressly applies to people who, like Petitioner, are charged as being inadmissible for having entered the United States without inspection.

7. Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

8. Further, Petitioner is a Cuban national who would be eligible for adjustment of status under the Cuban Adjustment Act if she were deemed to be paroled or admitted into the United States. An Immigration Judge previously found she was not admitted or paroled however the new BIA decisions of Matter of Q Li and Yajure Hurtado conflicts with the prior findings of the Immigration Court. Either the Respondent is eligible for Cuban Adjustment as a paroled alien released following entry under expedited removal, or she is eligible for bond as an entry without inspection alien placed in removal proceedings. The Government cannot

legally argue both positions.

9. Accordingly, Petitioner seeks a writ of *habeas corpus* requiring that she be released or in the alternative provide a bond hearing under § 1226(a) within seven days.  If the Court finds that Petitioner is in fact subject to mandatory detention and subject to expedited removal Petitioner requests that a finding be made that her initial release from custody would qualify as a parole.

## PARTIES

1. Petitioner, Isabella Guerra-Lamarche, is a non-citizen who is currently detained by ICE at the Montgomery Processing Center in Conroe, Texas. (*Ex. 1 Detainee Locator*)

2. Respondent Kristi Noem is the Secretary of the Department of Homeland Security ("DHS"). She is the cabinet-level secretary responsible for all immigration enforcement in the United States. She is sued in her official capacity only.

3. Respondent Todd Lyons is the Acting Director of U.S. Immigration and Customs Enforcement ("ICE"). He is the head of the federal agency responsible for all immigration enforcement in the United States. He is sued in his official capacity only.

4. Respondent Marcos Charles is the Acting Executive Associate Director

of ICE Enforcement and Removal Operations. He is the head of the ICE office that carries out arrests of noncitizens and removals from the United States. He is sued in his official capacity only.

5. Respondent, Pamela Bondi is the Attorney General of the United States. The Immigration Judges who decide removal cases and application for relief from removal do so as her designees. She is sued in her official capacity only.

6. Respondent, Warden, Montgomery County Processing Center. He is the head of the facility that currently maintains physical custody of the Petitioner. He is sued in his official capacity only.

## JURISDICTION

7. This Court has jurisdiction to hear this case under *28 U.S.C. § 2241* and *28 U.S.C. § 1331*, Federal Question Jurisdiction as Petitioner is presently in custody under color of authority of the United States and such custody is in violation of the U.S. Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to *28 U.S.C. § 2241*, and the *All Writs Act, 28 U.S.C. § 1651.*

## CUSTODY

8. Petitioner is under the Physical custody of the Respondents and is currently detained at the Montgomery Processing Center in Conroe,

Texas. (*Ex. 1*)

## **VENUE**

9. Venue is proper in this court, pursuant to *28 USC §1391(e),* in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where the Petitioner is detained. *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493- 500 (1973)

## **REQUIREMENTS SET FORTH IN 28 U.S.C 2243**

10. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. *28 U.S.C. § 2243*. If an order to show cause is issued, the Court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

11. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

# LEGAL FRAMEWORK

*i.    Immigration Bond Process*

12. The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

13. First, *8 U.S.C. § 1226* authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See 8 U.S.C. § 1229a*. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see 8 C.F.R. §§ 1003.19(a), 1236.1(d),* while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see 8 U.S.C. § 1226(c).*

14. Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under *8 U.S.C. § 1225(b)(1)* and for other recent arrivals seeking admission referred to under § 1225(b)(2).

15. Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see 8 U.S.C. § 1231(a)–(b).*

16. This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

17. The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility

Act (IIRIRA) of 1996, Pub. L. No. 104-–208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

18. Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). See Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

19. Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. See 8 U.S.C. § 1252(a) (1994); see also H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

20. On July 8, 2025, ICE, "in coordination with" DOJ, announced a new

policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

21. The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended and affects those who have resided in the United States for months, years, and even decades.

22. On September 5, 2025, the BIA adopted the same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

23. Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authority. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

24. Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court improperly stopped providing bond hearings for persons who entered the United States

without inspection and who have since resided here. Reviewing the EOIR interpretation, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the *United States. Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

25. Subsequently, court after court adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. See, e.g., *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025);

*Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); see also, e.g., *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at *2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at *3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at *2 (D. Neb. Aug. 14, 2025) (same).

26. Recently the Southern District of Texas has weighed in on the matter and granted habeas petitions in similar cases for the Petitioner. *See*

*Angel Fuentes v Lyons*, 5:25-cv-00153 (S.D. Tex. Oct. 16, 2025)(Laredo Division), *Rivera-Henriquez v. Tate,* 4:25-CV-045436, (S.D. Tex. Sep. 26, 2025)(Houston Division) *Buenrostro Mendez v. Bondi,* 4:25-cv-03726 (S.D. Tex. Oct. 7, 2025) (Houston Division), *Ortega-Aguirre v. Noem, 4*:25-cv-04332 (S.D. Tex. Oct. 10, 2025) (Houston Division), *Ascencio-Merino v. Dickey,* 4:25-cv-00490 (S.D. Tex. Oct. 21, 2025) (Houston Division), *Reyes-Lopez v Warden of MPC,* 4:25-cv-04629 (Oct. 21, 2025) (Houston Division), *Aslamov v Warden Bryan Uhls,* 4:25-cv-04299 (S.D. Tex. Oct. 22, 2025) (Houston Division)*, Mejia Juarez v. Bondi,* 4:25-cv-03937, (S.D. Tex. Oct. 27, 2025) (Houston Division), *Mendez Velazquez v. Noem,* 4:25-cv-04527 (S.D. Tex. Oct. 30, 2025) (Houston Division), *Torres-Rodriguez v. Noem,* 4:25-cv-5036, (S.D. Tex. Nov. 3, 2025) (Houston Division), *Reyes-Lopez v. Noem et al.*, 4:25-cv-04629 (S.D. Tex. Nov. 21, 2025), *Moreno Rangel v. Noem et al.*, 4:25-cv-05270 (S.D. Tex. Nov. 24, 2025)(Houston Division), *Lopez-Tipaz v Noem,* 4:25-cv-04905 (S.D. Tex. Nov. 25, 2025)(Houston Division), *Gutierrez-Fonseca v Warden of MPC,* 4:25-05229 (S.D. Tex. Nov. 25, 2025)(Houston Division)

27. District Courts have almost uniformly rejected DHS' and EOIR's new interpretation because it patently defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of the statutory

provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Petitioner. [1]

28. Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a [noncitizen]." These pending decisions include matters on appeal to the Board of Immigration Appeals, as the matter is not final.

29. The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See 8 U.S.C. § 1226(c)(1)(E).* Subparagraph (E)'s reference to such people makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." Rodriguez Vazquez, 779 F. Supp. 3d at 1257 *(citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)); *see also Gomes*, 2025 WL 1869299, at *7.

---

[1] Petitioner acknowledges that there have been a handful of District Courts that have ruled for the Federal Respondents *See, e.g., Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331 at *4 (S.D. Tex. Nov. 13, 2025) (Eskridge, J.);*Garibay-Robledo v. Noem*, No. 1:25-CV-177, 2025 WL 3264478 at *2–3 (N.D. Tex. Oct. 24, 2025) (Hendrix, J.);*Sandoval v. Acuna*, No. 6:25-cv-01467, 2025 WL 3048926 at *1 (W.D. La. Oct. 31, 2025).

30. Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

31. By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C.

32. § 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

33. Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended

*ii. The Cuban Adjustment Act*

34. The Cuban Adjustment Act of 1966 (CAA), Pub. L. No. 89-732, 80 Stat. 1161 (Nov. 2, 1966), codified as a historical note to 8 U.S.C. § 1255, provides a special pathway for certain Cuban nationals to adjust status to lawful permanent residence (LPR).

35. Unlike general adjustment under INA § 245(a), the CAA is a standalone

humanitarian statute enacted in response to Cold War–era political conditions and mass displacement from Cuba. It remains in force today.

36. An applicant for adjustment of status under the CAA must establish that she: (1) is a native or citizen of Cuba; (2) was inspected and admitted or paroled; (3) has been physically present in the United States of at least one year; (4) is otherwise admissible to the United States or eligible for an applicable waiver; and (5) merits a favorable exercise of discretion. Cuban Adjustment Act of 1966, Pub. L. No. 89/723, 80 Stat. 1161.

37. A Cuban national in removal proceedings may apply for CAA adjustment defensively before an Immigration Judge if DHS places the individual in proceedings after parole. However, if the applicant is deemed an arriving alien then USCIS has sole jurisdiction over the application. See Matter of Yauri, 25 I&N Dec. 103 (BIA 2009)

*iii.   Entry into the United States, apprehension and release*

38. An alien who "arrives in the United States [] whether or not at a designated port of arrival," is considered an applicant for admission, regardless of whether the alien entered legally or illegally. INA § 235(a)(1), 8 U.S.C. § 1225(a)(1); *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Additionally, the term "arriving" applies to aliens apprehended just inside "the southern border and not at a point of entry, on the same day she crossed into the United States," thus qualifying

arriving as a process rather than a discrete moment in time. *Matter of M-D-C-V-*, 28 I&N Dec. 18, 23 (BIA 2020).

39. Under the Governments new interpretation of Yajure Hurtado and Q Li applicants for admission who are "arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings [are] detained under section 235(b) of the INA, 8 U.S.C. § 1225(b). *Q. Li*, 29 I&N Dec. at 29. Therefore, regardless of the statutory invocations in DHS' official documents, the facts of this case are consistent with an arrest and detention under INA § 235(b), not INA §236(a).

40. Under INA § 235, detention of an arriving alien applying for asylum is mandatory "until immigration officers having finished "consider[ing]" the asylum application or until removal proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (quoting 8 U.S.C. §§ 1225(b)(1)(B)(ii), (b)(2)(A)). Even if INA § 240 removal proceedings are initiated with the filing of a NTA, the statute mandates detention of noncitizens subject to INA § 235(b) for the duration of the removal proceedings. INA § 235(b)(2)(A) (stating noncitizens who are inadmissible "shall be detained for a proceeding under section 240.")

41. In *Matter of M-S-*, the Attorney General, consistent with Jennings, held a noncitizen who is transferred from expedited removal proceedings

under INA § 235(b) to removal proceedings under INA 240 is ineligible for release on bond by an IJ. 27 I&N Dec at 501; *Q. Li*, 29 I&N Dec. at 69. The Attorney General affirmed the noncitizen must be detained until his proceedings conclude, unless granted parole. *M-S-*,27 I&N Dec at 501. Following *Jennings*, the Attorney General held the exclusive means for the release of a noncitizen subject to INA § 235(b) is a parole under INA § 212(d)(5). In addition, the Attorney General's reading of INA §§ 235 and 236 is consistent with the Respondent's argument in this motion. *See Matter of M-S-*, 27 I&N Dec. at 510-13.

## FACTS

42. Petitioner is a non-citizen who entered the United States without inspection. (Ex. 2 NTA)

43. The Petitioner was taken into immigration custody, upon entry, and charged with removability under section 212(of the Immigration and Nationality Act. (Ex. 2). The Petitioner was then released from custody and placed in regular removal proceedings. (Ex. 3 OREC)

44. In removal proceedings an Immigration Judge sustained and charge of removability under INA 212(a)(6)(A)(i) as an individual not inspected of paroled into the United States. With the sustaining of this charge the Petitioner was foreclosed from applying for adjustment of status under the Cuban Adjustment Act.

45. The Petitioner's matter was administratively closed on July 12, 2024 so that the Petitioner's permanent resident spouse may seek the approval of a family immigration petition on her behalf.

46. The Petitioner recently attended an ICE check-in and was re-detained and her proceeding was reinstituted.

47. Per Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) an IJ is unable to consider a bond for the Petitioner. Any bond application at this point would be deemed futile as IJ's are bound by Yarjure Hurtado.

48. The Petitioner currently remains in detention with her removal proceedings continuing in custody. Without relief from this Court the Petitioner will remain in custody for months or even years while her case is processed.

**CAUSE OF ACTION I**
**Unlawful Detention in Violation of 8 U.S.C. § 1226 and INA Regulations**

49. Petitioner incorporates by reference paragraphs 1 – 48.

50. The mandatory detention provision at *8 U.S.C. § 1225(b)(2)* does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they

are subject to § 1225(b)(1), § 1226(c), or § 1231.

51. The application of § 1225(b)(2) to Petitioner unlawfully mandates her continued detention and violates the INA.

52. It is important to note the Immigration Court and DHS have already found that the Petitioner was not subject to expedited removal and mandatory detention. If the Petitioner was in fact subject to expedite removal and mandatory detention then her initial release would have been through parole, and she would be eligible for adjustment of status under the Cuban Adjustment Act. (*See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)

**CAUSE OF ACTION II**
**Violation of Bond Regulations**

53. Petitioner incorporates by reference the allegations of fact set forth in preceding paragraphs 1-48.

54. In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." *62 Fed. Reg. at 10323*

(emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

55. Nonetheless, pursuant to *Matter of Yajure Hurtado*, EOIR has a policy and practice of applying § 1225(b)(2) to individual like Petitioner.

56. The application of § 1225(b)(2) to Petitioner unlawfully mandates her continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

**COUNT III**
**Due Process**
**U.S. Constitution, 5th Amendment**

57. Petitioner incorporates by reference paragraphs 1 – 48.

58. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

59. Petitioner has a fundamental interest in liberty and being free from official restraint.

60. The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates her right to due process.

61. Further, the Government is also seeking to retroactively re-characterize the Petitioner's entry into the United States as being subject to expedite removal proceedings under 8 USC 1225 while denying the Petitioner the ability to apply for adjustment of status under the Cuban Adjustment Act finding she was not paroled as a matter of law. If the Governments position on 8 USC 1225 rings true the only release that is allowable under the law would be under humanitarian parole and the Petitioner would be eligible to adjust, as per Jennings.

62. This exact scenario is currently being litigated in the Eleventh Circuit Court of Appeals where the Court just heard oral arguments. *See Irela Labrada-Hechavarria, et al.*, v. *U.S. Attorney General* 23-13664 (11th Cir. 2023)(Consolidated with *Saul Castillo-Casanova, et al., v. U.S. Attorney General,* 24-10645, (11th Cir. 2024). At oral arguments on December 12, 2025, the Eleventh Circuit Panel sharply questions the governments position of characterizing Cubans as subject to expedite proceedings while denying their entry as under parole, stating the Government "can't have their cake and eat it too."[2] (*See Irela Labrada-Hechavarria* Oral Argument at 16:00)

63. Denying the Petitioner both bond and their ability to apply for residency

---

[2] https://www.courtlistener.com/audio/101807/irela-labrada-hechavarria-v-us-attorney-general-consolidated-with/

under the Cuban Adjustment Act is a violation of Due Process.

## REQUEST FOR RELIEF

Petitioners pray for judgment against Respondents and respectfully request that the Court enters an order:

1. Assume jurisdiction over this matter;

2. Order that Petitioner shall not be transferred outside the Southern District of Texas while this habeas petition is pending;

3. Issue a writ of habeas corpus directing Respondent to immediately release Petitioner from detention or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days; alternatively if the Court finds the Petitioner is subject to 8 U.S.C. § 1225 then direct the Federal Respondents to provide the Petitioner evidence of her entry on parole

4. Issue and order that upon release all personal identity documents be returned to the Petitioner including driver's license, work permit and social security card.

5. Declare that Petitioner's continued detention violates federal law and the Constitution;

6. Award reasonable attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412; and

7. Grant any other relief the Court deems just and proper.

Respectfully submitted,


/s/Javier Rivera
Javier Rivera Esq.
Lead Counsel for Petitioner
Rivera & Shirhatti, PC
PO Box 848
Houston, Texas 77001
rjriveralaw@gmail.com
(P): (832) 991-1105

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I represent Petitioner, Isabella Guerra-Lamarche, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 7th day of January 2026.

*/s/Javier Rivera*
Javier Rivera
Attorney for Petitioner